UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARED FISHMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>PATRICK LOFTUS, MARCK JAEGER,<br>JEREMY BRADY, MICHAEL TONG, &<br>CHRISTOPHER TODARO,<br><br>*Defendants.* | 1:21-cv-01847-RJL |

**DEFENDANT OFFICER CHRISTOPHER TODARO'S RESPONSE
TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Officer Christopher Todaro (Officer Todaro) responds to Plaintiff's Statement of Undisputed Material Facts.

1. On February 17, 2020, Officer Christopher Todaro of the Metropolitan Police Department (MPD) was dispatched to the home of Plaintiff Jared Fishman to investigate the kidnapping of a young girl. (Exhibit A, Unredacted Body-Worn Camera Footage of Officer Christopher Todaro, at 4:18–4:23.)

   **RESPONSE**: It is undisputed that Officer Christopher Todaro learned the location of a suspect to a kidnapping of a child and responded to Plaintiff's home after Plaintiff's registered Audi was traced to Plaintiff's home on O Street N.W. Todaro Tr. 22:17-20.

2. As Officer Todaro approached the home, he believed he had reasonable suspicion to believe a kidnapping had occurred because he had been told that a 9-1-1 caller had described a man matching Fishman's description throwing a small child into a car registered to Fishman's address. (Exhibit B, Transcript of Deposition of Officer Christopher Todaro, at 22/1–23/3.)

   **RESPONSE**: This fact is undisputed.

3. The alleged kidnapping was the only crime that Officer Todaro was investigating at Fishman's home. (Id. at 21/21-25.)

> **RESPONSE**: This is disputed. Officer Todaro was present to investigate any crime, including the alleged kidnapping, and he had reasonable suspicion of a kidnapping until the investigation concluded. Def.'s Opp'n at 5-8.

4. Todaro was the second MPD officer to arrive at the scene. (Ex. A at 3:29-3:33)

    **RESPONSE**: This fact is undisputed, but it is immaterial whether Officer Todaro was the second officer to arrive on scene because the assertions of this paragraph cannot "affect the outcome of [this] suit under the governing law and, thus, "do not affect the summary judgment determination." *Lindell v. Landis Construction Co.*, 714 F. Supp. 2d 103, 105 (D.D.C. 2010) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)).

5. Seconds into his arrival, Todaro helped another officer grab Fishman and place him in handcuffs. (Id. at 3:32-3:44.).

    **RESPONSE**: It is undisputed that Officer Todaro assisted Officer Jaeger detain Plaintiff, who was a fleeing kidnapping suspect. Def.'s Opp'n at 4.

6. Moments later, a group of MPD officers walked Fishman to the corner of his street. (*Id.* at 7:50-8:03.)

    **RESPONSE**: It is undisputed that after Plaintiff was detained and separated from any possible victims, which is common police practice in scene management, officers walked Fishman to the corner of his street. Pl.'s Mot. Ex. B at 15:17-23.

7. Todaro remained on the front steps and spoke with Fishman's wife, Fiona, and two daughters, Arabella and Juliet, all of whom had witnessed Fishman being handcuffed. (Ex. A at 3:53.)

    **RESPONSE**: It is undisputed that Officer Todaro briefly spoke with Plaintiff's wife, but the assertion in this paragraph is not material. *Lindell*, 714 F. Supp. 2d at 105.

8. Fishman's younger daughter, Juliet, pleaded with Todaro and his colleagues to not arrest Fishman. (Id. at 3:53–4:06)

   **RESPONSE**:  It is undisputed that Officer Todaro and others detained Plaintiff and that Juliet cried when officers detained Plaintiff.  It is disputed whether Juliet understood, comprehended, or recognized that officers were detaining her father.  *See generally* Pl.'s Mot. Ex. A.  This fact is immaterial to whether she had been harmed.

9. Todaro asked all three people to move away from the house's front stairs, where Fishman sat handcuffed, and to "come back in the house." (*Id.*)

   **RESPONSE**:  It is undisputed that Officer Todaro asked all potential victims to move away from the house to separate all parties and allow officers to conduct their investigation.  Pl.'s Mot. Ex. B at 24:22-25.

10. All three complied; Juliet sat on the floor, crying and pleading with officers, "please don't arrest him, please—he hasn't done anything wrong," (*id.* at 4:08), before Fiona picked her up and consoled her. (*Id.* at 4:12).

    **RESPONSE**:  This fact is undisputed.

11. At this point, less than two minutes after Fishman was grabbed by Todaro and placed into handcuffs, Todaro believed that Fiona was Juliet's mother. (Ex. B at 30/11-18.)

    **RESPONSE**:  It is undisputed that Officer Todaro had information that Fiona was Juliet's mother.  That fact standing alone, did not mean the investigation was concluded.  Indeed, Officer Todaro was duty bound to fully investigate.  Def.'s Opp'n at 6.

12. Fishman's elder daughter, Arabella, then said "He did not take my sister. My sister was misbehaving, so he brought her into the car." (Ex. A at 4:18.)

    **RESPONSE**:  This fact is undisputed.

13. Todaro then told Arabella: "We got a call that there was a male who picked up a child, put her over his shoulder, and took her into the car—abducted her. Of course we take that very seriously." (Id. at 4:25.)

    **RESPONSE**:  This fact is undisputed, but the assertion in this paragraph is not material.

3

*Lindell*, 714 F. Supp. 2d at 105.

14. When Todaro finished speaking, Fiona took Juliet into the house and said, to Todaro, "please don't leave, stay right there." (Id. at 4:30.)

    **RESPONSE**:  This fact is undisputed, but the assertion in this paragraph is not material.

    *Lindell*, 714 F. Supp. 2d at 105.

15. Todaro then asked Arabella whether she had been with Fishman and Juliet the whole time. (*Id.* at 4:33.) In response, Arabella said, "I was in the car in the front seat. My sister was misbehaving, and she wouldn't get into the car and come home. We didn't want her to get taken or anything, and she was not listening, so my dad had to put her over his shoulder and bring her into the car. He did nothing wrong." (*Id.* at 4:35.)

    **RESPONSE**:  This is disputed to the extent Plaintiff's assertion attempts to support his argument that reasonable suspicion was dispelled during the interaction.  Def.'s Opp'n at 1.

16. At this point in the investigation, less than two minutes after Fishman was grabbed by Todaro and placed into handcuffs, Todaro did not believe he had any reason to think the girls were lying, and he believed that their explanation of the events was consistent with the allegations of the 9-1-1 caller. (Ex. B at 33/14-17.)

    **RESPONSE**:  This is disputed to the extent Plaintiff's assertion attempts to support his argument that reasonable suspicion was dispelled during the interaction.  Def.'s Opp'n at 1.  Officer Todaro and other officers had to continue their investigation, and the statements of the children were but one factor in the investigation.  Pl.'s Mot. Ex. B at 36:21-23.

17. At this point, less than three minutes after Fishman was grabbed by Todaro and placed into handcuffs, Todaro believed that Fishman was the "father" of both girls. (Id. at 37/5-6)

    **RESPONSE**:  This is disputed to the extent Plaintiff's assertion attempts to support his argument that reasonable suspicion was dispelled during the interaction.  Def.'s Opp'n at 1.  Although Officer Todaro believed that Plaintiff was the girls' father, the

4

investigation had not concluded. *Id*. at 6-8.

18. Todaro remained on the front steps while Fishman's wife, Fiona, consoled a still-crying Juliet in the doorway. (Ex. A at 5:20.) "You know what happened, sweetie?" said Fiona. "Somebody misunderstood. Somebody saw Daddy pick you up and they didn't know he was Daddy. They didn't know he was Daddy, so they thought, 'maybe this is just, like, a man who's taking a child.'" (Id. at 5:39.)

    **RESPONSE**: This fact is undisputed, but the assertion in this paragraph is not material.

    *Lindell*, 714 F. Supp. 2d at 105.

19. At this, Juliet screamed "No!" Fiona then turned and pointed towards Todaro. "But these officers know," she reassured Juliet. "They know the situation. They know the situation, and everything is ok. Somebody misunderstood." (Id. at 5:40).

    **RESPONSE**: This fact is undisputed but the assertion in this paragraph is not material.

    *Lindell*, 714 F. Supp. 2d at 105.

20. At this point in the investigation, less than three minutes after Fishman was grabbed by Todaro and placed into handcuffs, Todaro "definitely kn[ew]" that Fishman was Juliet's father. Ex. B at 38/23–24.

    **RESPONSE**: This is disputed to the extent Plaintiff's assertion attempts to support his

    argument that reasonable suspicion was dispelled during the interaction. Def.'s Opp'n at

    1. Regardless of whether Officer Todaro believed Plaintiff to be the child's father,

    officers were still conducting their investigation. Def's Opp'n at 5-8.

21. After speaking with Fiona, Juliet, and Arabella, Todaro remained on the steps of the house for roughly one minute. (Ex. A at 5:47-6:46.) He then left the house, moved an MPD cruiser that was parked in the middle of the street, and walked to the corner where Fishman was being held. (*Id.* at 6:46-7:42.) Roughly four minutes had passed since Todaro's exchange with Arabella. (*Id.*)

    **RESPONSE**: This fact is undisputed, but the assertion in this paragraph is not material.

    *Lindell*, 714 F. Supp. 2d at 105.

22. Todaro stood on the corner and watched as Fishman spoke with another MPD officer. During this exchange, Fishman shared the names and dates of birth of his wife and daughters. (Id. at 8:32-10:45.)

**RESPONSE**: This is disputed. Plaintiff was uncooperative during the investigation and officers took the investigation seriously, while Plaintiff did not. Todaro Tr. 58:19-25.

23. During this time, Todaro watched as Fishman asked those officers to remove his handcuffs and the officers declined. (Id. at 10: 50).

    **RESPONSE**: This fact is undisputed.

24. Two of the three officers that had been detaining Fishman then left the corner, and Todaro stayed behind near Fishman. (Id. at 11:00).

    **RESPONSE**: This fact is undisputed.

25. Todaro and a colleague then stood next to a handcuffed Fishman in near total silence for almost eight minutes. (Id. at 11:00-18:34.) Todaro briefly broke this silence to thank Fishman for his "patience" and to tell him that an MPD sergeant was on his way to the scene. (Id. at 18:34.)

    **RESPONSE**: This fact is undisputed.

26. Todaro believed that he was "waiting for" a "supervisor to come and conduct their investigation themselves to give us some guidance on what's going on." (Ex. B at 47-48/22-4.) Todaro was aware that the approval of a supervisor is not required to release someone from a *Terry* stop. (*Id.* at 11/17.).

    **RESPONSE**: This is disputed to the extent Plaintiff is asserting that reasonable suspicion had dispelled, and the investigation had concluded. Def.'s Opp'n at 1. Officer Todaro and other officers were waiting for their superior, Sgt. Bray, to arrive to the scene. Officers had to wait for the completion of a superior officer's investigation before Plaintiff was free to leave and any assertion to the contrary is disputed. *Id*. at 5.

27. After roughly five more minutes of Fishman standing next to Todaro, handcuffed and in silence on the corner of his street, Todaro asked a colleague about the location of the sergeant. (Ex. A at 23:16.) Around two minutes after that, the sergeant, Adam Bray, appeared. (*Id.* at 25:05.)

    **RESPONSE**: This fact is not in dispute. The timing of Officer Todaro's questions posed to fellow officers is immaterial to the outcome of the case. *Lindell*, 714 F. Supp. 2d

6

at 105.

28. As Todaro watched, Sergeant Bray told Fishman that the only thing that officers needed to confirm before Fishman could be uncuffed was that "the child [meaning Juliet] is OK, and is yours." (*Id.* at 27:25.) Bray continued, "I see you standing there in your socks, I understand that you were sitting on your own steps, and I want this all to be worked out as quick as we can." (*Id.*)

    **RESPONSE**: This fact is not in dispute.

29. Todaro already knew that Fishman was the girl's father (Ex. B at 37/5– 6, 38/23–24) and had already seen the girl and determined that she "seemed in good health" and was fine apart from the distress of seeing her father arrested in front of her. *Id.* at 65/8–14. However, he did not tell Sergeant Bray either of these things. Ex. A at 27:25–28:37.

    **RESPONSE**: This is disputed to the extent Plaintiff is asserting that reasonable suspicion had dispelled and the investigation had concluded. Def.'s Opp'n at 1.

    Officers had to wait for the completion of a superior officer's investigation before Plaintiff was free to leave and any assertion to the contrary is disputed. *Id.* at 5.

30. One minute later, after a brief exchange between Bray and Fishman that uncovered no new information about this mistaken kidnapping, Bray instructed the officers to uncuff Fishman and Fishman walked back to his house. (*Id.* at 28:37.)

    **RESPONSE**: It is disputed that Sgt. Bray did not learn new information for the first time on the scene. He learned several facts, including Plaintiff's position at U.S. Department of Justice. *See* Pl.'s Mot. Ex. A; *see also* Def's Mot. Ex. E at 77:4-10.

31. After he was uncuffed, Fishman walked back to his house, followed by Todaro and other officers, and sat on his front stoop with his wife. *Id.* at 28:38-29:41.

    **RESPONSE**: This fact is undisputed, but the assertion in this paragraph is not material. *Lindell*, 714 F. Supp. 2d at 105.

32. The officers then explained to the couple what had initiated the call, answered some questions, and left. *Id.* at 29:41-32:46.

    **RESPONSE**: It is undisputed that officers and supervisors remained on the scene to calmly explain all the facts that led to Plaintiff's detention.

7

33. At all points during Fishman's detention, the only crime Todaro was investigating and believed he had reasonable suspicion of was a potential kidnapping. (Ex. B at 31/7–10, 35/3–6, 36/3–6, 37/18–21, 60/21–23)

    **RESPONSE**:  This is disputed.  Officer Todaro was present to investigate any crime, including the alleged kidnapping, and he had reasonable suspicion of a kidnapping until the investigation concluded.  Def.'s Opp'n at 5-8.

34. Fishman was detained and in handcuffs for approximately 25 minutes. Ex. A at 3:32-28:38.

    **RESPONSE**:  This fact is undisputed.

Date: December 13, 2023                Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Chad Copeland*
CHAD COPELAND [982119]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Martha J. Mullen*
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
AMANDA L. TORRES [1562702]
Assistant Attorney General
400 Sixth Street, NW
Washington, D.C. 20001
202-724-6612
202-735-7390
martha.mullen@dc.gov
amanda.torres@dc.gov

*Counsel for Defendant Officer Christopher Todaro*