IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARED FISHMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE DISTRICT OF COLUMBIA; and LIETENANT PATRICK LOFTUS, OFFICER MARCK JAEGER, OFFICER JEREMY BRADY, OFFICER MICHAEL TONG, and OFFICER CHRISTOPHER TODARO, all of the Metropolitan Police Department of the District of Columbia, all in his individual capacity,<br><br>　　　　Defendants. | Case No. 21-cv-1847<br>Jury Trial Demanded |

**PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

**I.      PRELIMINARY STATEMENT**

In his motion for summary judgment against Defendant Officer Christopher Todaro, Plaintiff Jared Fishman argued that the undisputed material facts uncovered in discovery confirmed the allegations in his complaint: that Todaro knew minutes into his investigation that Fishman had not kidnapped anyone; that Todaro was not investigating any crime besides kidnapping; and that Todaro nevertheless continued to detain Fishman for over twenty more minutes, during which time he undertook no additional investigation. (*See* Doc. 47 at 3.) These facts are identical to those that this Court already deemed sufficient to defeat Defendants' motion to dismiss Fishman's Fourth Amendment claim. (*See* Doc. 31 at 13.) Todaro offers *no* evidence to dispute *any* of these facts. And Todaro's opposition to this motion for summary judgment does not respond to Fishman's legal claim either. Neither of Todaro's theories in support of his prolonged detention of Fishman have merit, and Fishman is therefore entitled to judgment as a matter of law.

**II.     ARGUMENT**

      **A.      There Are No Disputes of Fact Whatsoever**

Fishman's motion for summary judgment involves no disputes of material fact because Todaro has failed to properly address Fishman's assertion of each of the three key facts on which this Court based its denial of Defendants' motion to dismiss. A "non-moving party may oppose summary judgment using 'any of the kinds of evidentiary materials listed in Rule 56(c).' This evidence includes materials found in the record, such as 'depositions, documents, electronically stored information . . . or other materials.'" *Cauthen v. D.C.*, 459 F. Supp. 3d 134, 140 (D.D.C. 2020) (cleaned

1

up). "If a party. . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.' Fed. R. Civ. P. 56(e). 'Mere unsupported allegations or denials,' alone, are insufficient to defeat summary judgment." *Id.* (cleaned up).

Here, Todaro has failed to properly address any key assertion of fact. First, Todaro provides no evidence to dispute that he knew minutes into his investigation that Fishman had not kidnapped anyone. Instead, Todaro largely references two impermissible sources: his own opposition to Fishman's motion for summary judgment and his position, discussed in more detail *infra*, that Todaro could not conclude the *Terry* stop until his superiors had arrived and conducted a separate investigation. (*See, e.g.,* Doc. 50-1 at 7.) These are both legal arguments, not assertions of countervailing factual evidence. Tellingly, Todaro asserts six different times in his response to Fishman's Statement of Undisputed Material Facts that a fact is "disputed to the extent that Plaintiff is asserting that reasonable suspicion had dispelled." (*See, e.g.,* Doc. 50-1 at 6.) This objection clearly goes to the question of whether Fishman is entitled to judgment as a matter of *law*, not whether a given *fact* is legitimately in dispute. Todaro has thus failed to adequately dispute that he knew minutes into his investigation that Fishman had not kidnapped anyone.

Second, Todaro provides no evidence to dispute that kidnapping was the only crime that Todaro was ever investigating. Todaro claims that this statement is "disputed" because "Todaro was present to investigate *any* crime, *including* the alleged kidnapping." (*See* Doc. 50-1 at 2 (emphasis added).) But the only evidence

Todaro offers in support of this statement is a citation to his own opposition motion. (*See* Doc. 50-1 at 2.) And, in fact, the evidence cited in this portion of Todaro's opposition directly contradicts his assertion that Todaro was ever investigating a crime besides kidnapping. At nine distinct points in his deposition, Todaro testified that he was investigating a kidnapping; at no point in his deposition did he mention investigating or having reasonable suspicion for any other crime. (*See* Doc. 50 at 5 (citing these nine portions of Todaro's deposition).) Six of these nine instances came when counsel for Fishman paused her review of Todaro's body-worn camera footage to specifically ask Todaro to state the "crime or crimes" for which he felt he had "reasonable suspicion" at that particular moment in the investigation. (*See* Doc. 47, Ex. B at 21:21-25; 31:7-10; 35:3-6; 36:3-6; 37:18-21; 60:21-23.) At each opportunity, Todaro answered that he felt he had reasonable suspicion for a kidnapping; not once did he mention any other crime. (*Id*.) Todaro has thus failed to adequately dispute that he was ever investigating any crime besides kidnapping.

Finally, Todaro provides no evidence to dispute that he continued to detain Fishman for another 20 minutes after the point at which he lacked reasonable suspicion that Fishman had committed a crime. Todaro concedes that it is "undisputed" that "Fishman was detained and in handcuffs for approximately 25 minutes." (Doc. 50-1 at 8.) As discussed *supra*, Todaro has not adequately denied that he lacked reasonable suspicion for the only crime he was ever investigating within roughly two minutes of his arrival on scene. As such, his concession that Fishman was detained for roughly twenty five minutes amounts to a concession that for over

3

twenty of those minutes Fishman was detained in the absence of reasonable suspicion. Nowhere else in his response to Fishman's Statement of Undisputed Material facts has Todaro adequately made any assertion to the contrary. There are, therefore, no disputes of material fact before this Court.

> **B.     Todaro Lacked Reasonable Suspicion During All But Roughly Two Minutes of His Investigation**

Todaro first argues that he did not violate Fishman's Fourth Amendment rights because he "had reasonable suspicion of a kidnapping until superior officers arrived on scene and conducted their own investigation."[1] (Doc. 50 at 5.) Later in his opposition, Todaro claims that reasonable suspicion existed "throughout the entirety of the[ ] on-scene investigation." (*Id.* at 8.) This is so, Todaro claims, because "[o]fficers had to wait for the completion of a superior officer's investigation before Plaintiff was free to leave." (Doc. 50-1 at 6.)

Taken together, these statements amount to a novel and indefensible theory of the Fourth Amendment: that police can create reasonable suspicion for the continued detention of a suspect simply by continuing their investigation. Indeed, Todaro does not reference any new information that came to light once his superiors arrived (and

---

[1] Todaro devotes a significant portion of his opposition to justifying his use of handcuffs in detaining Fishman. (*See* Doc. 50 at 4.) Todaro also cites numerous pieces of federal and District of Columbia law-enforcement guidance, but offers no evidence that he *followed* or even considered them during his investigation of Fishman. (*See Id.* at 2, 4.) Neither Todaro's use of handcuffs nor any of this general guidance is relevant to Fishman's motion for summary judgment, and this Court need not consider the portions of Todaro's opposition that address these issues.

4

there is none),[2] or explain how "reasonable suspicion of a possible kidnapping" could have persisted given the information that Todaro himself uncovered on Fishman's front steps. Nor does Todaro acknowledge his own deposition testimony, in which he testified that officers *do not* need approval from a superior to end a *Terry* stop. (*See* Doc. 47, Ex. B at 11: 9-17.) Instead, Todaro simply asserts that the investigation could not end until his superiors arrived, and claims that this alone gave him continued reasonable suspicion.

This argument completely inverts the actual causal relationship between the existence of reasonable suspicion and the permissibility of extending a *Terry* stop: the presence of reasonable suspicion *is what makes a continued stop permissible*, not the other way around. *See, e.g., United States v. Devaugh*, 422 F. Supp. 3d 104, 114 (D.D.C. 2019) (describing limits on duration and intrusiveness). An investigation is not magically imbued with reasonable suspicion simply because officers continue to investigate. And an officer may not prolong a *Terry* stop because he would prefer that someone else be the one to release the suspect.

To accept Todaro's first argument, then, would be to neutralize the Fourth Amendment as a constraint on police behavior. In Todaro's telling, all that officers need to continue a *Terry* stop indefinitely is their own subjective belief—regardless of

---

[2] Todaro notes that during his continued detention of Fishman another officer told Todaro that Sergeant Adam Bray was headed to the scene and, in Todaro's words, "would need to speak with the child" (meaning Fishman's younger daughter). (Doc. 50 at 5.) Sergeant Bray, however, released Fishman from handcuffs without ever speaking to any other member of Fishman's family, and never spoke to either of Fishman's daughters. (*See* Doc. 47 at 4.)

any objective evidence to the contrary—that further investigation is required. By Todaro's logic, he could have detained Fishman for another three hours if a traffic jam delayed Todaro's superiors' arrival for that amount of time. This is the opposite of what the Fourth Amendment commands. *See United States v. Castle*, 825 F.3d 625, 635 (D.C. Cir. 2016) (reasonable suspicion assessed "within an objective framework").

### C. Todaro May Not—and Did Not—Rely on Knowledge Possessed Only by Other Officers.

Todaro's second and final argument is that his prolonged detention of Fishman was permissible in light of knowledge held by other officers on scene. It is an attempt to infuse other defendants, other possible crimes, and other officers' knowledge into the question of when *Todaro* lacked reasonable suspicion that Fishman had committed a kidnapping. This attempt, however, is both unsupported by the record and prohibited by the law of this Circuit, and Todaro's invocation of the vertical collective knowledge doctrine does nothing to change that.

Todaro relies, for this argument, on two inaccurate factual assertions. Specifically, he brazenly claims that Fishman, in his motion for summary judgment, "posits" both "that parents cannot harm their own children" and that "once even a hint of a parental relationship is recognized, suspicion of a crime should dissipate." (Doc. 50 at 1.) Neither claim is accurate. The first simply appears nowhere in the record of this case; the second stretches one of Fishman's straightforward legal claims almost beyond recognition. In his motion for summary judgment, Fishman referenced a principle of black-letter District of Columbia law: that custodial parents cannot kidnap their children except for instances in which one parent "intentionally coneal[s]

6

a child from the child's other parent.³ (*See* Doc. 47 at 7, citing D.C. Code §§ 22-2001 and 16-1022.) Fishman then applied this principle to undisputed material evidence showing that Todaro knew both that Fishman was the father of the alleged kidnapping victim and that Fishman had not concealed the alleged victim from the girl's mother. (*See* Doc. 47 at 7-9.) Fishman has made no other claim about the way a suspect's parental status shapes officers' "[reasonable] suspicion of a crime."

Todaro's misstatements about what Fishman has "posit[ed]," however, are not the product of a genuine misunderstanding or disagreement. They are instead an attempt to retroactively broaden the scope of Todaro's investigation by twisting Fishman's words. This strategy runs headlong into three inconvenient facts: first, that Fishman has moved for summary judgment against only Todaro, leaving the question of damages and the other Defendants' liability for trial (*see* Doc. 47 at 12);⁴ second, that Todaro repeatedly testified that he was never investigating any crime besides kidnapping, (*see id.* at 6); and third, that, in this Circuit, courts undertaking reasonable suspicion analysis "cannot take into account" any facts that "were not known to the investigating officer[ ] at the time of the search." *See United States v.*

---

³ Todaro states that "[i]t is a crime for a custodial parent to kidnap a child, and this *may* occur in cases of intentional concealment from the other parent." (Doc. 50 at 2 (emphasis added).) That statement is incorrect. Under District of Columbia law, the *only* way in which a custodial parent can kidnap his child is to intentionally conceal the child from the other parent; it is not one of multiple ways in which a parental kidnapping may occur.

⁴ Unique among Defendants, Todaro has admitted that he knew that Fishman and his wife were the girls' parents within roughly two minutes of his arrival on the scene, making it unnecessary to present to a jury any question about his liability.

7

*Brown*, 334 F.3d 1161, 1166 & n2 (D.C. Cir. 2003).

Todaro attempts to broaden the aperture by way of the "vertical collective knowledge doctrine." (Doc. 50 at 8.) Here, though, this doctrine is a red herring. The vertical collective knowledge doctrine allows an officer to act on an order from a colleague even if that officer himself lacks sufficient information for a valid arrest or detention. *See United States v. Gorham*, 317 F. Supp. 3d 459, 472-73 (D.D.C. 2018) (explaining the doctrine). "In this sense, the executing officers are acting as the agents or proxies of, or are relying on information provided by, the officers who possess probable cause or reasonable suspicion." *Id.* at 473.

Here, Todaro did not act as anyone's proxy or agent; he conducted his own investigation and detained Fishman of his own accord; while Todaro asserts that he took "direction from officers 'in possession of the information giving rise to the required reasonable suspicion,'" he supports this claim with nothing but a cursory citation to "his body-worn camera" and "deposition testimony." (Doc. 50 at 8.) In fact, Todaro's appeal to these sources of evidence upends his invocation of vertical knowledge: that doctrine allows officers to act on information that they themselves *do not possess* by empowering courts to "substitute the knowledge of the *instructing officer or officers* for the knowledge of the *acting officer*." *United States v. Massenburg*, 654 F.3d 480, 493 (4th Cir. 2011) (emphasis in original). Todaro's body-worn camera footage and deposition testimony, by contrast, speak only to what Todaro actually

8

saw, heard, and knew at the time of the investigation.[5] As such, the vertical collective knowledge doctrine has no relevance to this case.

What Todaro appears to actually seek is the application of the *horizonal* collective knowledge doctrine. This theory is much broader than its vertical counterpart: it allows the post-hoc aggregation of information held—but not actually communicated—by "a number of individual law enforcement officers [who] have pieces of the probable cause [or reasonable suspicion] puzzle." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008); *See also Massenburg,* 654 F.3d at 493-95 (describing differences between horizontal and collective knowledge). In his opposition motion, Todaro criticizes Fishman's omission of the deposition testimony of other MPD members who were at the scene, implying that everything each officer, sergeant, and lieutenant knew is relevant here, even if it was not actually communicated to Todaro. (*See* Doc. 50 at 2.) Such aggregation without communication is the very essence of horizontal knowledge. But crucially—and as Todaro himself points out in his opposition—this Court, in an opinion by Judge Moss, has "declined to embrace the horizontal collective knowledge doctrine." (Doc. 50 at 7 (citing

---

[5] Even if Todaro *had* been acting on a directive from a colleague, no officer involved in the investigation possessed—or could have possessed—knowledge suggesting that Fishman had committed a parental kidnapping. Because Todaro quickly ascertained that Fishman was the father of the alleged victim, parental kidnapping was the only possible crime for which Todaro could have even theoretically possessed reasonable suspicion. Nothing that any of Todaro's colleagues knew, saw, or heard, therefore, could have possibly contributed to Todaro's reasonable suspicion that Fishman had kidnapped anyone.

*Gorham*, 317 F. Supp. 3d at 473).) Neither version of the collective knowledge doctrine, therefore, applies to this case nor changes the reasonable suspicion analysis in any way.

## III.   CONCLUSION

At the beginning of last year, in February 2023, this Court agreed with Fishman that a Fourth Amendment violation had been plausibly pleaded when it held that "the Complaint alleges sufficient facts to establish that Officer[ ] . . . Todaro . . . reached the conclusion that no crime had been committed well before the *Terry* stop was terminated." (Doc. 31 at 13.) Since then much has happened but little has changed: discovery confirmed the facts that Fishman initially alleged; Fishman presented those facts in his motion for summary judgment, and Todaro has now opposed that motion in ways that barely address, let alone counter, Fishman's argument. This Court should therefore affirm the principles it set out in its denial of Defendants' motion to dismiss, and grant Fishman's motion for summary judgment against Todaro.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
(D.C. Bar No. 1033346)
Emily Gerrick
(D.C. Bar No. 90010592)
Samuel Rosen
(D.C. Bar No. 90012245)
GERSTEIN HARROW LLP
810 7th St. NE, Ste. 301
Washington, DC 20002
charlie@gerstein-harrow.com

        (202) 670-4809

        */s/ Jason Harrow*
        Jason Harrow
        GERSTEIN HARROW LLP
        12100 Wilshire Blvd. Ste 800
        Los Angeles, CA 90025
        jason@gerstein-harrow.com