# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JARED FISHMAN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 21-1847 (RJL)** |
| | ) | |
| **THE DISTRICT OF COLUMBIA, and** | ) | |
| **LIEUTENANT PATRICK LOFTUS,** | ) | |
| **OFFICER MARCK JAEGER,** | ) | |
| **OFFICER JEREMY BRADY,** | ) | |
| **OFFICER MICHAEL TONG, and** | ) | |
| **OFFICER CHRISTOPHER TODARO,** | ) | |
| **of the Metropolitan Police Department,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## MEMORANDUM OPINION
March 12, 2025 [Dkt. ##47, 54]

Before the Court are the parties' motions for summary judgment, which revolve around the question of whether an initially valid *Terry* stop by a bevy of Metropolitan Police Department officers remained lawful during the approximately twenty-five minutes they detained plaintiff in handcuffs. For the reasons that follow, the Court finds it did not and therefore **GRANTS** plaintiff's motion for partial summary judgment and **DENIES** defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Jared Fishman filed his complaint in this case on September 7, 2021, against the District of Columbia (the "District") and multiple Metropolitan Police

Department officers: Lieutenant Patrick Loftus and Officers Marck Jaeger, Jeremy Brady,

Christopher Todaro, and Michael Tong (collectively, "Defendant Officers"). First Am.

Compl. ("Compl.") [Dkt. #18]. Fishman brought eight counts: five § 1983 claims and

three claims under D.C. law. The Court has dismissed five of Fishman's claims, but

determined that he has sufficiently pled Count III (seizure without reasonable suspicion),

Count IV (arrest without probable cause), and Count VI (false imprisonment). *See* Mem.

Op. [Dkt. #31] (February 2, 2023). Defendants filed their answer on April 14, 2023, with

the Defendant Officers asserting qualified immunity. Answer [Dkt. #38] at 21.

Defendants have moved for summary judgment on all counts. Plaintiffs have moved for

partial summary judgment as to Officer Todaro. Both motions are fully briefed and ripe.[1]

## LEGAL STANDARD

The Court must view each motion for summary judgment separately and in the

light most favorable to the non-moving party, then determine whether it can enter

judgment under Rule 56's standard for each party. *Howard Town Ctr. Dev., LLC v.*

*Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017). Under Rule 56, summary

judgment is due "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).

Each movant "bears the initial responsibility of informing the district court of the basis

---

[1] As to defendants' motion, see Defs.' Mem. of P. & A. in Supp. of Their Mot. for Summ. J. ("Defs.' Mot. & Br.") [Dkt. #54]; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") [Dkt. #55]; Defs.' Reply in Supp. of Their Mot. for Summ. J. ("Defs.' Reply") [Dkt. #56].

As to plaintiff's motion, see Mem. of P. & A. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Br.") [Dkt. #47-1]; Def. Officer Christopher Todaro's Opp'n to Pl.'s Mot. for Partial Summ. J. ("Todaro's Opp'n") [Dkt. #50]; Pl.'s Reply in Supp. of Summ. J. ("Pl.'s Reply") [Dkt. #53].

for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to "come forward

'with specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. Proc. 56(e)).

If the facts are disputed, the Court must make all justifiable inferences in favor of the

non-movant, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), unless the

non-movant's version of events is "blatantly contradicted by the record, so that no

reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007). Of course, if

the Court finds no genuine dispute of material fact, it can assess whether a movant is

entitled to judgment as a matter of law. If the movant is so entitled, summary judgment

will issue. Fed. R. Civ. Proc. 56.

## FINDINGS OF FACT

The Court finds that the following facts are beyond dispute at summary judgment

based on the record in this case. *See* Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477

U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Scott v. Harris*,

550 U.S. 372 (2007).

On February 17, 2020, Fishman took his two daughters to the popular Tex-Mex

restaurant, Cactus Cantina, in the heart of Northwest Washington, D.C. Compl. ¶ 14;

Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Opposed

Mot. for Summ. J. ("Pl.'s Resp. to SUMF") [Dkt. #55-1] at 1. Fishman's younger

daughter, approximately eight years old, was misbehaving when the three left the

restaurant, and she refused to get into her father's car.  Compl. ¶ 15; Pl.'s Resp. to SUMF

¶ 2.  As such, Fishman picked up his child and put her in the car.  Compl. ¶ 17; Pl.'s

Resp. to SUMF ¶ 2.  An apparently concerned civilian knocked on Fishman's window to

ask whether there was a problem.  Compl. ¶ 18.  Indeed, another concerned civilian

witnessing this situation called 9-1-1, reporting the events as a possible abduction of a

child in a green Audi, providing the license plate number and the physical description of

the suspect as a white balding male in his forties.  Pl.'s Resp. to SUMF ¶ 6; Defs.' Mot.

& Br., Ex. 6 ("911 Call Recording") [Dkt. #54-2].  The caller reported, "I don't know if it

was an abduction, or a father manhandling his child in a really bad way . . . ."  Defs.'

Mot. & Br., Ex. 6 at 0:00:10-21.  As such, the 9-1-1 dispatcher put out a call using a code

to indicate a possible kidnapping, providing a description of Fishman, his license plate,

and his home address based on his vehicle registration.  Compl. ¶ 25.

  Officer Jaeger was the first responder to arrive at Fishman's home in the

Georgetown section of the city.  He approached Fishman, who was sitting on his front

doorstep.  *See* Defs.' Mot. & Br., Ex. 2 ("Jaeger BWC") [Dkt. #54-2] at 3:40; Compl.

¶ 30.  Fishman confirmed that he drove an Audi and had just returned home.  Jaeger

BWC 3:40-50; Compl. ¶¶ 33–36.  Fishman—realizing that someone near Cactus Cantina

must have called the police, Pl.'s Resp. to SUMF ¶ 10, Compl. ¶ 37—then exclaimed,

"And that guy that called in has no idea what's going on."  Jaeger BWC 3:50-54; Compl.

¶ 38; Pl.'s Resp. to SUMF ¶ 10.  Officer Jaeger replied, "Maybe you can help me out

with what's going on."  Jaeger BWC 3:54-56; Compl. ¶ 39.  Fishman said, "hold on one

sec," rose, and stepped inside his house.  Compl. ¶ 40.  Officer Jaeger told him not to go

inside. Compl. ¶¶ 41–42; Jaeger BWC 3:57–4:00. Fishman entered his home anyway, and Officer Jaeger seized him, bringing him back outside. Compl. ¶¶ 44–48; Jaeger BWC 4:00-10; Pl.'s Resp. to SUMF ¶ 12.[2]

Jaeger began to handcuff Fishman when Defendant Officers Brady, Tong, and Todaro arrived. Pl.'s Resp. to SUMF ¶ 12. Fishman repeatedly yelled, "I am not doing anything," and "You do not have the right to enter my house," as officers placed him in handcuffs. Jaeger BWC 4:05-31. During this commotion, Fishman's two daughters came outside onto the stoop. Compl. ¶¶ 49–52; Pl.'s Resp. to SUMF ¶ 13. The older daughter exclaimed, "[I]t is my sister, she was misbehaving." Compl. ¶ 51; Jaeger BWC 4:17-21; Pl.'s Resp. to SUMF ¶ 14. The younger daughter then said, "He hasn't done anything wrong," and professed, "It's my fault." Defs.' Mot. & Br., Ex. 5 ("Brady BWC") [Dkt. #54-2] at 3:35-52. Unfortunately, this inquiry did not end with the younger daughter's confession. Instead, Officer Tong then walked Fishman, now in handcuffs, to the end of block and out of sight as a "best practice" to remove him from the situation. Defs.' Mot. & Br., Ex. 9 ("Tong Dep.") [Dkt. #54-3] at 38–39. Officer Brady remained on Fishman's front steps to speak with Fishman's wife (Fiona Macaulay) and the two children. Pl.'s Resp. to SUMF ¶ 16; Brady BWC 3:35ff.

Body-worn camera footage paints a clear picture of the events just described and what transpired throughout the rest of Fishman's detention: Less than one minute after

---

[2] The parties dispute whether Plaintiff had crossed the threshold to enter his home when Officer Jaeger told him not to enter. However, because the officer's initial seizure of Fishman is not at issue on summary judgment, this is not material.

Fishman is moved down the block, Officer Brady asks the younger daughter for her name and introduces himself. The mother Macaulay, however, asks that her younger daughter be permitted to drink some water before they continue talking. Brady BWC 4:21-41. Over the next five-and-a-half minutes, Macaulay and her older daughter try to explain the situation to, and calm down, the younger daughter until Macaulay settles both children inside so that she can speak with Officer Brady on the front steps. Brady BWC 4:42– 10:12. Macaulay and the older daughter confirmed "that the girl whom the witness had observed being placed in the car was Plaintiff's younger daughter." Pl.'s Resp. to SUMF ¶ 18. For the next three minutes, Officer Brady answered Macaulay's questions, explaining that he needs to interview everyone and that he cannot bring Fishman back to the house at that time. Brady BWC 10:13–13:36. Twelve minutes after the stop began, Officer Brady obtains Macaulay's name and information, the children's information, and learns that Fishman is indeed the children's biological father. Brady BWC 13:37–15:10.

Next, Officer Brady spends three minutes explaining to Macaulay more about what is happening, asking her what she knows about the incident, and answering more questions. Brady BWC 15:11–18:33. Officer Brady—specifying that Macaulay can be present—asks Macaulay if he can talk to the younger daughter, and she replies, "absolutely not." Brady BWC 18:33-37. Officer Brady then spends over four-and-a-half minutes answering more questions from Macaulay and explaining that he "need[s]" to hear from her younger daughter what happened and whether she has been harmed. Brady BWC 18:38–23:15. Then, between 21 and 22 minutes after the stop began, Officer Brady finally begins questioning the younger daughter. Brady BWC 24:15. Officer

6

Brady speaks with the younger daughter for over three minutes. Brady BWC 24:15–27:38. The younger daughter "told Officer Brady that she had fought with her older sister, ran from the car, and was picked up by her father. She stated that she was not hurt and that her father had picked her up gently." Pl.'s Resp. to SUMF ¶ 21 (citation omitted). In total, it took over 24 minutes for an officer to interview the younger daughter and hear directly from her that she had not been harmed. Brady BWC 3:00–27:38.

While Officer Brady was trying to speak with the younger daughter, Sergeant Adam Bray and Lieutenant Loftus arrived on scene as the ranking investigating officers. *See* Pl.'s Resp. to SUMF ¶¶ 23–24. "After briefly conferring with Lieutenant Loftus, Sergeant Bray walked over to where [Fishman] was being held and began speaking with him." Pl.'s Resp. to SUMF ¶ 25. "Without prompting, Plaintiff stated that his family was likely reluctant to speak with officers because [he] is a United States Department of Justice (DOJ) civil rights attorney and 'I prosecute police officers who violate the Constitution as a job.'" Pl.'s Resp. to SUMF ¶ 28. He continued, "My family doesn't trust police and so that is probably why she doesn't want to speak. I did not kidnap anyone. The girl I put in my car is my child.'" Pl.'s Resp. to SUMF ¶ 28. Sergeant Bray explained the nature of the 9-1-1 call and had Fishman released from his handcuffs. Pl.'s Resp. to SUMF ¶¶ 29. This occurred about one minute after Officer Brady concluded his interview of Fishman's younger daughter. *See* Brady BWC 28:51.

In total, Fishman was detained for approximately 25 minutes and held in handcuffs for almost that entire time. *See* Pl.'s Resp. to SUMF ¶ 32. After Fishman

returned to his home from the end of the block, Lieutenant Loftus concluded that the

officers were finished and would write a report as one checking on the welfare of a

juvenile.  Defs.' Mot. & Br., Ex. 4 ("Bray BWC") [Dkt. #54-2] at 13:38-46.

DISCUSSION

Finding no genuine dispute as to any material facts, the Court evaluates whether

plaintiff and defendants, respectively, have made a showing that they are entitled to

judgment as a matter of law.  Fed. R. Civ. Proc. 56(a).  First, a brief discussion of how

the law governs the three claims at issue on summary judgment.

## I.    Claims Under 42 U.S.C. § 1983

Plaintiff brings two claims (Counts III & IV) under 42 U.S.C. § 1983, which

requires showing that a defendant deprived him of a right protected by federal law or the

Constitution and that the defendant was acting under the color of state law.  *Miller v.*

*Marriott Int'l LLC*, 378 F. Supp. 3d 1, 9 (D.D.C. 2019), *aff'd*, 2019 WL 6492628 (D.C.

Cir. Nov. 15, 2019).  Here, plaintiff alleges constitutional violations against proper

§ 1983 defendants—the Defendant Officers in their official capacity and the District.

Officers may be sued under § 1983 in their official capacity, *see Pollard v. District of*

*Columbia*, 191 F. Supp. 3d 58, 67 (D.D.C. 2016), *aff'd*, 698 F. App'x 616 (D.C. Cir.

2017), as can the District, *see Barnhardt v. District of Columbia*, 560 F. Supp. 2d 15, 17

(D.D.C. 2008).  The District, however, is only liable under § 1983 where an official

policy both causes plaintiff's deprivation of a constitutional right and is the "moving

force of the constitutional violation."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694

(1978); *see Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986);

8

*Barnhardt*, 560 F. Supp. 2d at 18.

"The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's alleged constitutional deprivations are that his detention in handcuffs for over twenty minutes constituted (1) an unconstitutional investigative stop without the necessary reasonable suspicion and (2) an unconstitutional arrest without probable cause.

While the Fourth Amendment protects against *unwarranted* search and seizure, police officers "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This is known as an investigative stop or a *Terry* stop, and its reasonable suspicion standard is a "less demanding standard than probable cause." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). To have reasonable suspicion, an officer, considering "the totality of the circumstances," must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *see also United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001).

There is no firm line as to how long a *Terry* stop can last. *See United States v. Montoya-Hernandez*, 473 U.S. 531, 542–43 (1985); *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985). Investigative stops, however, must be "sufficiently limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion). While "[t]he point at which an investigative stop becomes an arrest is not marked with a bright

9

line," "a stop that is unduly prolonged or intrusive transforms from an investigative stop into an arrest requiring probable cause." *Hall v. District of Columbia*, 867 F.3d 138, 153 (D.C. Cir. 2017). Accordingly, an investigative stop "must (1) 'last no longer than is necessary to effectuate the purpose of a stop' and (2) employ 'the least intrusive means reasonably available to verify or dispel the officer's suspicion.'" *United States v. Smith*, 373 F. Supp. 3d 223, 238 (D.D.C. 2019) (quoting *Royer*, 460 U.S. at 500).

If an investigatory stop becomes an arrest, an officer must have probable cause. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). As explained, this transformation from investigatory stop to formal arrest occurs when a stop "is unduly prolonged or intrusive." *Hall*, 867 F.3d at 153. "Probable cause is more than bare suspicion but less than beyond a reasonable doubt and, indeed, is less than a preponderance of the evidence." *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016). "Probable cause exists where the arresting officer has facts and circumstances within his or her knowledge that would lead a reasonable person to believe that an offense has been or is being committed." *United States v. Gorrell*, 360 F. Supp. 2d 48, 52 (D.D.C. 2004). This standard is an objective inquiry, *Lin v. District of Columbia*, 47 F.4th 828, 840 (D.C. Cir. 2022), that considers the totality of the circumstances and requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity," *Wesby*, 583 U.S. at 57 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

To prevail in their summary judgment motion as to Count III, the Defendant Officers must show that their initially valid *Terry* stop of Fishman remained lawful for

Fishman's entire detention.[3]  In other words, they must show that: (1) officers "had a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30); and (2) officers' twenty-five minute detention of Fishman in handcuffs lasted only as long as necessary to effectuate its purposes via "the least intrusive means reasonably available to verify or dispel the officer[s'] suspicion," *Smith*, 373 F. Supp. 3d at 238 (quoting *Royer*, 460 U.S. at 500).

Considering the totality of the circumstances, the material, undisputed facts in this "particular situation," *Sharpe*, 470 U.S. at 686 (quoting *Place*, 462 U.S. at 709 n.10), are that: (1) officers responded to a potential kidnapping with reports of the "manhandling" of a child; (2) Fishman was identified as a suspect; (3) Fishman ignored an officer's demands that he remain outside and walked away from the officer into his home; (4) the officers pulled Fishman back outside and placed him in handcuffs; (5) while officers restrained Fishman, Fishman's wife and two daughters came outside, and his daughters pleaded with the officers to stop, with the older one explaining that the younger one was at fault for the reported incident by misbehaving and the younger daughter acknowledging that she was in the wrong; (6) some officers remained at Fishman's front step to speak with Fishman's wife and daughters, while other officers held Fishman in handcuffs down the block; and (7) in total, officers held Fishman in handcuffs for around

---

[3] To be clear, the Court is addressing only the *Defendant Officers'* summary judgment claims. The District, of course, is also a Defendant who moved for summary judgment on all counts. Under *Monell*, the standard for liability is different for the District than for the Defendant Officers' themselves. The District, however, did not brief or explain why it is due summary judgment under *Monell*, so it has waived those arguments on summary judgment.

twenty-five minutes.

With these material facts and the totality of the circumstances in mind, the Court cannot find that defendants are entitled to judgment as a matter of law because the Defendant Officers have not shown that they had and maintained reasonable suspicion that Fishman had kidnapped anyone for the full period they detained him. *See Smith*, 373 F. Supp. 3d at 238. Indeed, reasonable suspicion ended when the officers learned that plaintiff was the father and that the younger daughter was acting up and at fault. *See Weaver v. Hanna*, 122 F. Supp. 2d 1, 4 (D.D.C. 2000) (demonstrating that reasonable suspicion ends in the investigation of a kidnapping when a parent's identity is determined).

Fishman's wife and both daughters were present as officers placed Fishman in handcuffs. Officers quickly learned from the family that the younger daughter had been misbehaving and could see for themselves that both girls were not only present but did not appear to have been physically harmed. Further, the Defendant Officers have not shown that their detention of Fishman lasted only as long as necessary or that holding Fishman in handcuffs for over twenty minutes at the end of the block was "the least intrusive means reasonably available to verify or dispel" their suspicions of criminal activity. Therefore, the Court cannot award the Defendant Officers summary judgment on Count III. Since probable cause is a higher standard than reasonable suspicion, it necessarily follows that the Court cannot award the Defendant Officers summary

judgment on Count IV either.[4]

On the other hand, plaintiff has shown that Officer Todaro lacked the necessary justification to hold Fishman in handcuffs for approximately twenty-five minutes for the reasons just described. Officer Todaro arrived second on the scene and helped detain Fishman in handcuffs. *See* Defs.' Resp. to Pl.'s SUMF [Dkt. #50-1] ¶¶ 4–5. Officer Todaro remained on the front steps and spoke with Macaulay and the couple's two daughters. Officer Todaro heard from them that the younger daughter was misbehaving and that Fishman "did not take" the younger daughter. Defs.' Resp. to Pl.'s SUMF ¶¶ 7–8, 12–13, 15–16. Todaro admitted in his deposition that he had no reason to believe the girls were lying. Pl.'s Br., Ex. B. [Dkt. 47-4] at 33:14-17. Therefore, after these first couple minutes, Officer Todaro believed that Fishman and Macaulay were the girls' father and mother. *See* Pl.'s Br., Ex. B. 37:3-9. At that point, as explained *supra*, there was no reasonable suspicion of a kidnapping. *See Weaver*, 122 F. Supp. 2d at 4. Accordingly, plaintiff has proven that Officer Todaro's continued detention of him was unconstitutional because the officer lacked the reasonable suspicion necessary to hold him under *Terry*. It follows, of course, that Officer Todaro thus also lacked probable cause to hold plaintiff. Plaintiff is thus entitled to summary judgment as a matter of law on Counts III and IV against Officer Todaro.

## II.    False Imprisonment

False imprisonment claims are "indistinguishable as a practical matter" from false

---

[4] Regarding the District's summary judgment claims on Counts III and IV, see *supra* note 3.

arrest claims. *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010). The

elements of both claims are "(1) detention or restraint against one's will within

boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *Harris v.

U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 911–12 (D.C. Cir. 2015). Indeed, "the central

issue is whether the arresting officer was justified in ordering the arrest of the plaintiff."

*Bradshaw v. District of Columbia*, 43 A.3d 318, 323 (D.C. 2012) (quoting *Scott v.

District of Columbia*, 493 A.2d 319, 321 (D.C. 1985)). To defeat a false imprisonment

claim, an officer can "demonstrate that (1) he or she believed, in good faith, that his [or

her] conduct was lawful, and (2) this belief was reasonable." *Sherrod v. McHugh*, 334

F. Supp. 3d 219, 256 (D.D.C. 2018) (quoting *District of Columbia v. Murphy*, 631 A.2d

34, 36 (D.C. 1993)).

Defendants have not shown that they are entitled to judgment as a matter of law as

to plaintiff's false imprisonment claim. As explained, false imprisonment claims are

"indistinguishable as a practical matter" from false arrest claims. *Enders*, 4 A.3d at 461

(D.C. 2010). Because defendants clearly have not demonstrated the lawfulness of their

arrest of Fishman lasting over 20 minutes, they cannot succeed on defeating Fishman's

false imprisonment claim at summary judgment. *See Sherrod*, 334 F. Supp. 3d at 256.

Plaintiff, however, has successfully shown at this stage that Officer Todaro falsely

imprisoned him. Todaro's detention of Fishman was unlawful because it was neither a

lawful continued investigative stop nor a lawful arrest. Therefore, there is no question or

genuine dispute of material fact that Officer Todaro was responsible for detaining

Fishman against his will without a lawful purpose. *Sherrod*, 334 F. Supp. 3d at 256.

Accordingly, plaintiff merits judgment against Officer Todaro on this claim.

## III.    Qualified Immunity

All defendants assert qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts undergo a two-step process for evaluating qualified immunity claims, and they possess "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. The first prong considers whether plaintiff's alleged facts demonstrate that the officer's conduct violated a constitutional right. *Id.* at 232. The second prong asks whether that right was clearly established. *Id.*

A right is clearly established if in that case's specific context, *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015), its "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard*, 572 U.S. 765, 779 (2014). Further, "the right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (first quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam); then quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this assessment, our Court looks to cases from the Supreme Court, our Circuit, and other courts if they exhibit a consensus view. *Lash*, 786 F.3d at 7.

15

For the following reasons, I have concluded that defendants cannot avail themselves of qualified immunity. In assessing qualified immunity, I must consider two questions: (1) whether "the facts alleged show the officer's conduct violated a constitutional right"; and (2) "whether the right was clearly established." *Saucier*, 533 U.S. at 201. Therefore, if defendants wish to avail themselves of qualified immunity, they cannot have violated a constitutional right that is clearly established. *See id.* Unfortunately for defendants, they violated Fishman's Fourth Amendment right to be free from unreasonable restraint and seizure. The only question remaining is whether the right at issue is clearly established.

Admittedly, I am unaware of a case with parallel facts to this one. Fortunately, however, "a case directly on point" is *not* required. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Instead, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741). And here, existing precedent clearly places the question beyond debate whether officers need to be able to articulate *a single reason* to hold an individual in handcuffs for over twenty minutes under either a reasonable suspicion or probable cause standard. It's a requirement baked into the standards themselves, with reasonable suspicion requiring "articulable facts," *Sokolow*, 490 U.S. at 7, and probable cause requiring "facts and circumstances within [one's] knowledge," *Gorrell*, 360 F. Supp. 2d at 52. The record in this case shows not one reason! Qualified immunity does not entitle an officer to exercise unreasonable caution that leads to unlawful detention where "any reasonable official in the defendant's

shoes would have understood that he was violating" a right. Any reasonable officer

knows that it requires at least one articulable fact or reason to hold someone in handcuffs

for twenty minutes. Therefore, defendants do not have qualified immunity in this case.

## CONCLUSION

For these reasons, I **GRANT** plaintiff's motion for partial summary judgment and

**DENY** defendants' motion for summary judgment.


RICHARD J. LEON
United States District Judge

17